IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DON WILLIS, SR., } | |
| TDCJ-CID No. 527954, } | |
| Plaintiff, } | |
| v. } | CIVIL ACTION H-06-3975 |
| NATHANIEL QUARTERMAN *et al*., } | |
| Defendants. } | |

OPINION ON DISMISSAL

While incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"), plaintiff Don Willis, Sr. filed a *pro se* complaint alleging violations of his civil rights under 42 U.S.C. § 1983 (Docket Entry No.1), an amended complaint (Docket Entry No.12), two supplements to the complaint (Docket Entries No.6, No.16), and a memorandum of law in support of the complaint. (Docket Entry No.11). Defendants Michael Barnett, Cade Crippin, and Tommy McMillian have filed a motion for summary judgment. (Docket Entry No.36). Plaintiff has filed a response to their motion (Docket Entry No.42) and a motion for summary judgment. (Docket Entry No.44). For the reasons to follow, the Court will grant defendants' motion for summary judgment, deny plaintiff's motions, and dismiss the pending complaint.

BACKGROUND

Plaintiff alleges that the following events took place on the Ellis Unit of TDCJ-CID and gave rise to the pending civil rights complaint:

On September 10, 2006, around 8:00 a.m., plaintiff passed by the loading ramp on his way to work in the hog barn. (Docket Entries No.1, No.16, No.42). He saw a black plastic

1

bag inside the ramp, which he had never seen before. (*Id*.). He looked inside the bag but did not touch it or pick it up. (*Id*.). About that time, Officer Crippin appeared from an adjacent office[1] and instructed him to come to him. (*Id*.). Plaintiff complied. (*Id*.). Crippin called him a fool and told him that there was toilet paper in the bag. (*Id.*). Crippin ordered plaintiff to turn around. (*Id*.). Plaintiff complied and Crippin placed hand restraints on him. (*Id*.). Crippin then took plaintiff to the back of the ramp and pulled the two bags out, where plaintiff could see the toilet paper. Plaintiff stood by himself. (*Id*.). Officer McMillian stood nearby. (*Id*.). Ten to fifteen minutes later, Captain Barnett arrived in a truck.[2] (*Id*.). Barnett picked up the bags but did not open them. (*Id.*). Barnett took the bags and placed them in the back of his truck. (*Id.*). Barnett said to plaintiff, "I saw what you did." (*Id.*). Plaintiff denied doing anything. (*Id*.). Barnett accused him of lying and plaintiff accused Barnett of the same. (*Id.*). Barnett ordered plaintiff to get on the ground. (*Id*.). Plaintiff found it difficult to comply because of the hand restraints. (*Id*.). Captain Barnett and Officer Crippin then kicked plaintiff's legs from under him and pushed him to the ground.[3] (*Id.*). As a result, plaintiff suffered a cut to the inside of his mouth, to his tongue, and to his left knee. (*Id.*). The impact to his face caused his right eye and chin to swell. (*Id.*). Plaintiff told Crippin that they did not have "to do me like this." (*Id.*). Crippin said, "Who do you think they are going to believe, you or an officer?" (*Id.*). Crippin

---

[1] Plaintiff indicates that Officer McMillian was inside the office on the telephone when plaintiff walked up the ramp. (Docket Entry No.16).

[2] Plaintiff states that he walked halfway up the ramp, looked at another inmate with a quizzical look as if to say, "why is that bag inside of the ramp and who could of [sic] put it there?" (Docket Entry No.16). Plaintiff turned to come down the ramp when he noticed an officer coming of the office, ordering him to come here. (*Id.*). After Crippin cuffed plaintiff and took the bags off the ramp, McMillian came out of the office and spoke with Crippin. Thereafter, Barnett appeared in a white truck. (*Id.*).

[3] Plaintiff states that after the exchange with Barnett, Barnett and Crippin walked over to him and put their arms between his arms. (Docket Entry No.16). Barnett then ordered plaintiff to the ground. (*Id.*). Within seconds of the order, Crippin and Barnett kicked plaintiff's legs from underneath him and picked him up and threw him to the ground headfirst. (*Id.*).

whispered something to McMillian, who stood about eight feet away from where the incident took place. (*Id*.).

A camera crew was called but they did not photograph the contents of the bags. (*Id*.). Plaintiff was taken to the infirmary and then to his wing,[4] where photographs of his injuries were taken. (*Id*.). Nurse Shirley Harkey treated plaintiff's injuries. She said to plaintiff, "They did a number on you. You're not going to suit [sic] me are you?" (*Id*.). Nurse Shirley Henderson also told plaintiff that he was not the only inmate that Crippin pulled the toilet paper trick on and that she would testify on plaintiff's behalf. (*Id*.).

The next day, plaintiff was served with a disciplinary case for possession of 432 packs of tobacco and thirty cans of snuff. (*Id.*). In addition to his testimony about the contraband, Crippin testified at the disciplinary hearing that plaintiff had refused several orders given by Crippin and Barnett and that plaintiff was kicking or jerking away from them. (*Id*.). Plaintiff was found guilty as charged.[5] (*Id*.). Plaintiff unsuccessfully appealed the disciplinary conviction through the prison's grievance system. (*Id*.).

In the pending complaint, petitioner seeks declaratory and injunctive relief, and compensatory and punitive damages on claims that Crippin, Barnett, and McMillian used excessive force to restrain him in violation of the Eighth Amendment. (*Id.*). He also seeks restoration of his good time and custody level lost in the disciplinary conviction. (Docket Entry No.12).

---

[4] Plaintiff indicates that he was taken to pre-hearing detention after Crippin photographed all of his injuries, except for the cut inside his mouth. (Docket Entry No.16).

[5] Plaintiff claims that the Disciplinary Hearing Officer found him guilty even though he knew that plaintiff had been wronged. Plaintiff's case manager told him that it would not be wise to "use" Officer McMillian because McMillian told her that he heard plaintiff cursing and that was all McMillian said. (Docket Entry No.16).

Defendants Barnett, Crippin, and McMillian move for summary judgment on grounds that they are entitled to Eleventh Amendment and qualified immunity and that plaintiff has failed to state a valid Eighth Amendment claim against them. (Docket Entry No.36). Defendants also move for summary judgment on grounds that they cannot provide the relief plaintiff requests because they cannot overturn decisions by the disciplinary committee or "investigate all officials past." (*Id.*).

## STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## DISCUSSION

The Civil Rights Act of 1866 creates a private right of action for redressing the violation of federal law by those acting under color of state law. 42 U.S.C. § 1983; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984). Section 1983 is not itself a source

of substantive rights but merely provides a method for vindicating federal rights conferred elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a section 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). A section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Thus for plaintiff to recover, he must show that the defendants deprived him a right guaranteed by the Constitution or the laws of the United States. *See Daniels v. Williams*, 474 U.S. 327, 329-31 (1986).

### Personal Involvement

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381 (5th Cir. 1983). Liability based on one's supervisory capacity exists if the supervisor is personally involved in the constitutional deprivation or a sufficient causal connection exits between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

In this case, plaintiff alleges no facts that would give rise to a claim that Nathaniel Quarterman or Warden A. Janicek deprived him of any constitutional right. Therefore, to the extent that plaintiff seeks relief against Quarterman and Janicek, such claims are subject to dismissal pursuant to 28 U.S.C. § 1915A(b).

### Eleventh Amendment Immunity

Suits for damages against the state are barred by the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169 (1985). Under the Eleventh Amendment, an

unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state. *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 144 (1993). This bar remains in effect when state officials are sued for damages in their official capacity. *Cory v. White,* 457 U.S. 85, 89 (1982). To the extent plaintiff sues defendants for monetary damages in their official capacities, as employees of TDCJ-CID, plaintiff's claims are barred by the Eleventh Amendment.

### Qualified Immunity

Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1272 (5th Cir. 1992).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations establish a constitutional violation, the court next considers whether the defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope*, 536 U.S. at 739 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002). Even so, on summary judgment, the court must look to the evidence before it in the light most favorable to the plaintiff when conducting a qualified immunity inquiry. *Id.* at 323.

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. *Hudson v. McMillian,* 503 U.S. 1, 5 (1992). When an inmate has alleged that a prison official used excessive force, "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. "In determining whether the use of force [by a prison guard] was wanton and unnecessary," the court considers "the extent of [the] injury suffered," "the need for [the] application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotation marks omitted). These factors are not exclusive, and each case must be judged on its own facts. *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

Defendants contend they are entitled to summary judgment because plaintiff's allegations of unnecessary and excessive force are negated by the summary judgment evidence. (Docket Entry No.36). Defendants contend that the use of force report attached to their motion shows that Barnett and Crippin used a minimal amount of force within TDCJ guidelines and acted reasonably, given plaintiff's resistance and threat against Crippin. (*Id.*). Defendants also contend that the summary judgment evidence refutes plaintiff's claims of injuries and that it shows that their use of force was reasonable. (*Id.*).

The Incident Report dated October 4, 2007, reflects that plaintiff complained that Barnett and Crippin slammed him to the ground while he was handcuffed and that his head, eye, and mouth were busted, *i.e.*, his eye was swollen shut, and his jaw was swollen to the size of an orange. (Docket Entry No.36-3, page 6). Plaintiff claimed that Nurse S. Harkey stated to him, "They beat you up real bad, they have a history of doing other guys like that and covering it up." (*Id.*).

The Report also shows that on September 10, 2006, at approximately 5:00 a.m., two plastic trash bags containing 432 packs of tobacco and thirty cans of snuff were found in the Ellis Unit Hog Barn loading ramp, near the tool room. (*Id.*, page 7). The tobacco products were replaced with toilet paper and the bags left where they were originally found. (*Id.*). Officer Crippin hid in the tool room where he had visual contact of the bags and the general area and waited to see who retrieved the bags. (*Id.*). Around 8:00 a.m. Crippin observed plaintiff enter the hog barn, look into the tool room as he passed by, return and again look into the tool room, then walk over to the two plastic bags. (*Id.*). He saw plaintiff look over his shoulder toward the tool room and pick up the two bags. (*Id.*). Crippin exited the tool room and ordered plaintiff to put his hands behind his back. (*Id.*). Plaintiff complied and Barnett was notified of the situation by radio; Barnett entered the barn a few minutes later. (*Id.*). After plaintiff was placed in hand restraints, he became loud and belligerent; when ordered to be quiet, he kicked the dirt floor. (*Id.*). Barnett then took plaintiff by his upper left arm and Crippin took him by his right arm and instructed plaintiff to drop to his knees. (*Id.*). Plaintiff failed to comply and tried to pull away. (*Id.*). After plaintiff was placed face down on the dirt floor, he verbally threatened Crippin. (*Id.*).

Once under control, plaintiff was transported to the Unit's infirmary. (*Id*.). Plaintiff's medical examination showed that he sustained a minor abrasion to his left knee and a three-fourth inch laceration to the left side of his tongue. (*Id*.). No violation of the Use of Force Plan was found. (*Id*.). Nurse Harkey denied that she told plaintiff that they beat him up real bad and that they had a history of doing other guys like that and covering it up.[6] (*Id*.). Harkey also denied that plaintiff's eye was swollen shut and that his jaw was the size of an orange and that plaintiff sustained any other injury other than the minor ones noted. (*Id*., pages 7-8). The case was administratively closed. (*Id.*, page 8).

The Use of Force Injury Report reflects that plaintiff bit his tongue and scraped his left knee. (*Id*., page 34). Nurse Harkey categorized the injuries as minor and noted that plaintiff was treated for such injuries. (*Id*.). The Pre-Segregation/Psychiatric Pre-Crisis Management Health Evaluation shows that plaintiff suffered a three-fourth inch laceration to the left side of his tongue, a three-fourth inch abrasion to his left knee and a one-inch bruise to his left knee. (*Id.*, page 46). No stitches were required. (Docket Entry No.36-4, page 3). Twelve days after the incident, plaintiff was seen by a dentist for a tooth defect and a bump on his lower lip, which was attributed to a cut he sustained on September 10, 2006. (*Id*., pages 4, 13). Plaintiff was given a pre-rinse and a dental examination was ordered for the tooth defect. (*Id*.).

Following a disciplinary hearing, plaintiff was found guilty of possessing contraband, refusing an order, and threatening Sgt. Crippin. (Docket Entry No.36-5, page 3).

---

[6] Defendants' summary judgment evidence includes Shirley Harkey's affidavit, wherein she attests to plaintiff's minor injuries and the treatment provided. (Docket Entry No.47-3, page 1). She further attests that plaintiff did not present a swollen eye or any other injury other than those documented on September 10, 2006. (*Id*.). She attests that she did not tell plaintiff that "the officers had beaten him up really bad"; nor did she make any like statement. (*Id*.).

Punishment was assessed at commissary and cell restriction, a reduction in class line status, and forfeiture of 365 days of good conduct time. (*Id.*).

Based on the pleadings and the record, the Court finds that the parties do not dispute the following facts: Plaintiff approached two plastic bags that contained or had previously contained contraband. Officer Crippin knew that the bags contained contraband and lay in wait to see who attempted to retrieve such bags. He observed plaintiff approach the bags and ordered plaintiff to step off the loading ramp. Plaintiff complied and Crippin placed hand restraints on plaintiff. Officer McMillian stood nearby. Shortly thereafter, Captain Barnett arrived and he and plaintiff exchanged harsh words. Barnett and Crippin held plaintiff's arms and Barnett ordered plaintiff to kneel. Plaintiff did not comply with the order.[7] Barnett and Crippin forced plaintiff to the ground. Plaintiff sustained a cut to his tongue and an abrasion to his left knee. He was seen by medical personnel and received appropriate care. The injuries were classified as minor. Plaintiff was charged with a disciplinary violation for possession of contraband, refusing an order, and threatening an officer. He was found guilty as charged. His appeal of the disciplinary conviction was unsuccessful.

Plaintiff presents no evidence to contravene his medical record and no evidence to contravene the Disciplinary Hearing Report or other TDCJ-CID reports. Although plaintiff and defendants dispute the record, defendants' documents reflect that plaintiff's actions were perceived as a threat to the order and security of the institution. Moreover, the undisputed record shows that plaintiff did not initially comply with Barnett's order to kneel, for whatever reason, and the officers used physical means to force compliance. Plaintiff suffered minor injuries when he hit the ground. Such injuries are not inconsistent with the stated use of force and do not

---

[7] Plaintiff indicates that he had trouble complying with the order because of the hand restraints but he did not refuse to comply. Defendants contend that he refused the order.

evince that Crippin and Barnett intended that plaintiff suffer any injury. *See Brown v. Lippard*, 472 F.3d 384, 387 (5th Cir. 2006) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (noting that "'[i]n evaluating excessive force claims, courts may look to the seriousness of the injury to determine "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur'"). The officers reported that plaintiff became loud and belligerent, that he kicked the dirt, and threatened Crippin. While the undisputed record does not show that plaintiff posed a physical threat to the officers per se, the fact of his non-compliance with the order itself poses a threat to the order and security of the prison as an institution. Plaintiff states no facts to show that either officer acted maliciously or sadistically for the purpose of causing harm, rather than in a good faith effort to restore the discipline breached by his non-compliance with the order to kneel. His claim that Crippin and Barnett unconstitutionally used excessive force upon him is without merit.

The record further shows that Officer McMillian did not participate in the use of force. Because the force expended in this case did not violate plaintiff's Eighth Amendment rights, plaintiff's complaint that McMillian failed to intervene is legally frivolous and subject to dismissal.

Plaintiff attached to his "Motion for Summary Judgment" many of the same documents that defendants attached to their motion. (Docket Entry No.44). Plaintiff also attached to the same a hand-written copy of TDCJ rules and policies regarding the use of force. The Court construes this attachment as plaintiff's argument that by their actions, defendants failed to comply with TDCJ policy regarding the use of force. (*Id.*). To the extent that plaintiff asserts such claim, the Court notes that the failure to follow institutional rules and regulations,

standing alone, does not constitute a violation of plaintiff's constitutional rights. *See Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994). "A prison official's failure to follow the prison's own policies, procedures or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

Defendants are entitled to qualified immunity on plaintiff's excessive force claim. For this reason, plaintiff is not entitled to monetary damages or equitable relief.

### Disciplinary Conviction and Punishment

"[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated." *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)); *Clarke v. Stalder*, 154 F.3d 186 (5th Cir. 1998) (finding favorable ruling on request for injunctive relief would necessarily imply the invalidity of loss of good-time credits). This principle applies not only when the prisoner challenges the judgment as a substantive matter but also when he challenges "procedures . . . such as necessarily to imply the invalidity of the judgment." *Edwards*, 520 U.S. at 645. A conviction for purposes of *Heck* includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good-time credits. *Id.* at 641.

A favorable judgment on plaintiff's claims regarding the validity of his disciplinary conviction for possession of contraband, refusing to obey an order, and threatening an officer would necessarily imply the invalidity of the disciplinary conviction. Plaintiff does not allege that the conviction has been reversed, expunged, set aside, or called into question, as

*Heck* mandates. Accordingly, plaintiff's claims against defendants with respect to such conviction are subject to dismissal.

## CONCLUSION

Based on the forgoing, the Court ORDERS the following:

1. Defendants' motion to file a supplement to the motion for summary judgment (Docket Entry No.47) is GRANTED.

2. Defendants' motion for summary judgment (Docket Entry No.36) is GRANTED. All claims against all defendants are DENIED.

3. Plaintiff's motion for summary judgment (Docket Entry No.44) is DENIED.

4. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

5. All pending motions, if any, are DENIED.

It is so ORDERED.

SIGNED at Houston, Texas, this 14th day of January, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

*Heck* mandates. Accordingly, plaintiff's claims against defendants with respect to such conviction are subject to dismissal.

## CONCLUSION

Based on the forgoing, the Court ORDERS the following:

1. Defendants' motion to file a supplement to the motion for summary judgment (Docket Entry No.47) is GRANTED.

2. Defendants' motion for summary judgment (Docket Entry No.36) is GRANTED. All claims against all defendants are DENIED.

3. Plaintiff's motion for summary judgment (Docket Entry No.44) is DENIED.

4. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

5. All pending motions, if any, are DENIED.

It is so ORDERED.

SIGNED at Houston, Texas, this 14th day of January, 2009.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE